R. P. MUNDAY, Respondent, v. HENRY BRITTON, Appellant.

Springfield Court of Appeals, June 5, 1920.

1. **TROVER AND CONVERSION:** Allegation as to Possession Necessary.  In action for conversion, plaintiff must allege that he was in possession, or entitled to possession, of the property at the time of the alleged conversion.

2. **JUSTICES OF THE PEACE:** Defective Pleading Can be Amended on Appeal to Circuit Court.  In action for conversion, where statement filed in the justice court was defective for failure to allege that plaintiff was in possession or entitled to possession at the time

of the alleged conversion, plaintiff could amend pleading by supplying such omission on appeal to the circuit court.

3. **CHATTEL MORTGAGES: Feed Bill a Lien on Animals Only if Possession was Necessary to Protect Mortgagee.** Feed bill paid by mortgagee to get possession of mortgaged animals from third person hired by mortgagor to care for them was not a lien on animals where they were not depreciating in value so as to justify mortgagee in declaring a default, but, if they were depreciating in value, to such an extent that possession by mortgagee would have been necessary to protect his rights, the amount so paid would become a part of secured debt or be of equal dignity therewith and be a lien on the property.

4. ———: **Mortgagor Did Not "Dispose of" Animals by Hiring Third Person to Take Care of Them.** Mortgagor by hiring a person to keep and care for mortgaged animals did not "dispose of" them within mortgage providing that mortgagor shall not "dispose of" them and entitling mortgagee to declare debt due and take possession if mortgagor disposes thereof.

5. ———: **Meaning of "Dispose of" in Chattel Mortgage Stated.** In mortgage on animals, providing that mortgagor shall not "dispose of" them, the word "dispose" has a larger meaning than selling; selling being only one of the methods of disposing of property.

6. ———: **Mortgagee Taking Possession on Default Must Foreclose Within Reasonable Time.** The right to take possession given mortgagee on default by mortgagor is given him merely to enable him to foreclose mortage, which he must do in good faith within a reasonable time.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Lamar & Lamar* for appellant.

*W. L. Hiett* for respondent.

STURGIS, P. J.—This suit originated in a justice of the peace court in Texas county, and is for conversion of two mares and a mule colt. The defendant justifies his action in taking possession of said animals and his subsequent appropriation of same to his own use by reason of the foreclosure of a chattel mortgage thereon and his

purchase thereunder. The plaintiff is the original owner and mortgagor of the two mares, the mule colt having been born between the giving of the mortgage and its foreclosure.

The principal facts are that the plaintiff induced the defendant to sign as joint maker a note for twenty dollars payable to a bank at Houston, Missouri, and gave him a chattel mortgage on these animals for his protection. The note and mortgage are dated March 10, 1916, and were due and payable sixty days thereafter. The chattel mortgage contains the usual conditions as to the mortgaged property remaining in possession of the mortgagor till default in payment unless the mortgaged property unreasonably depreciates in value or the mortgagor sells or disposes of the same. A day or two after giving this mortgage the plaintiff left Texas County placing the mortgaged property in the care and custody of one Dave Holland under an agreement that Holland was to feed and care for same at $12 per month. The defendant's mortgage was not recorded until some two weeks later but Holland had knowledge of same. In a little more than a month after the mortgage was given, and about the same length of time after Holland's possession under the agreement as to feeding and caring for the animals for plaintiff, the defendant demanded and took possession of the animals on the ground that same had greatly depreciated in value, the secured note not yet being due. To get such possession the defendant paid Holland the accrued feed bill then amounting to $14.

The plaintiff paid the secured note before it became due. The plaintiff was yet absent and it is not shown that he then knew of defendant's action in having taken possession of the property and paying the feed bill thereon. It appears that a nephew of plaintiff attended to paying off the note and the nephew, being without authority or funds with which to do so and claiming that defendant's action in taking possession of the mortgaged property before the secured debt was due was unwarranted, declined to reimburse defendant for the fourteen

dollar feed bill which he had paid in order to obtain such possession.

It appears therefore that at the time the secured note became due it was fully paid by plaintiff although the defendant as mortgagee had taken and was in possession of the mortgaged property on the ground that his liability on such note was endangered by a depreciation in value of such property. The only claim that defendant then had was that he should be reimbursed for the feed bill owed by plaintiff to Holland which he had paid on taking possesion of the mortgaged property. No foreclosure proceeding had been commenced and this condition of affairs continued for some four months when defendant advertised the property and sold it, ostensibly at least under the terms of the mortgage, and himself became the purchaser. Later the plaintiff brought this suit for conversion and on trial in the circuit court without a jury the court found for plaintiff assessing the value of the property at $90, crediting thereon the amount of the feed bill paid by defendant and rendered judgment for plaintiff for $76. The defendant appeals.

A question of pleading is raised which must be disposed of first. In plaintiff's statement filed in the justice court he alleges that he was the owner of the property and that defendant unlawfully took possession of the same and converted it to his own use to plaintiff's damage in the sum of $250. After appeal to the circuit court objection was made that the statement was fatally defective in that there was no allegation that plaintiff was in possession or entitled to possession at the time of the alleged conversion. The court thereupon permitted plaintiff to amend by adding such allegation. While the omitted allegation is essential to state a cause of action in conversion (Schwald v. Brunjes, 139 Mo. App. 516, 123 S. W. 472, and Bank v. Land Co., 152 Mo. 145, 156, 53 S. W. 902), we need not decide whether this rather technical rule applies to the informal pleadings allowed in justice courts. Here the pleading was amended and the question is whether suc han essential allegation may be

added by amendment after the case reaches the circuit court. This question was settled in the affirmative by the Supreme Court in Dowdy v. Wamble, 110 Mo. 280, 19 S. W: 489, certified to that court by the St. Louis Court of Appeals. It was there held that on appeals from justices of the peace the law "permits on appeals even where essential facts were thereby first brought into the case." That was a replevin case and there is no reason why the same rule should not apply to a suit in conversion. It is there held and has been repeatedly so held since, that a plaintiff's statement in a justice court which is fundamentally insufficient and lacking in some essential averment necessary to state a cause of action may be made sufficient by amendment after the case reaches the circuit court. [Union Brewing Co. v. Ehlhardt, 139 Mo. App. 129, 120 S. W. 1193; Daniel v. Atkins, 66 Mo. App. 342; Rocheport Bank v. Doak, 75 Mo. App. 332; Rechnitzer v. Vogelsang, 117 Mo. App. 148, 93 S. W. 326.]

Looking to the merits of the case we find that the question to which the evidence was mostly directed was whether the mortgaged property had materially depreciated in value so as to justify defendant's action in declaring a default on that ground prior to the secured note becoming due. The court found against defendant on this point and that such property had not so depreciated. That such finding is supported by substantial evidence and is binding on this appeal is conceded. Under the finding therefore that defendant wrongfully took this property into his possession before the secured debt was due, we cannot sustain defendant's claim to have a right to hold the property and later foreclose the mortgage, merely to reimburse himself for the prior payment of the feed bill. Had defendant been compelled to pay this feed bill at a time and for a purpose necessary to protect his rights under the mortgage, then we would grant that the amounts so paid would become a part of, or of equal dignity with, the secured debt and therefore be a lien on the porperty. [11 C. J. 562.] But as there stated, where the mortgagee wrongfully takes possession of the mortgaged

property before the secured debt is due he cannot charge the mortgagor with the expense of keeping it. And for the same reason he could not charge against the property a prior feed bill owed by the mortgagor which he paid solely to accomplish a wrongful taking of this property. The mortgagee is not entitled to such protection in doing a wrongful act.

It is not necessary therefore for us to determine whether or not the person to whom defendant paid the feed bill had an agister's lien on this property to the defandnt's mortgage. Defendant concedes that an agister's lien is not superior to a mortgage lien where the mortgage is recorded within a reasonable time. [Birmingham v. Carr, 196 Mo. App. 411, 197 S. W. 711.] But, says defendant, this mortgage was not recorded till fifteen days after being given and meantime the agister made the contract and incurred expense in feeding these horses. Again we might say that defendant is seeking to be protected for his own wrong for it was his fault that he did not file the mortgage within a reasonable time. Be that as it may, the defendant is a volunteer in paying this feed bill since his taking this property when he did is found to be wrongful and he was not paying a debt the payment of which was necessary to protect his rights.

The defendant also justifies the taking of this property before the secured debt was due on the ground of a violation of the provision of the mortgage forbidding any sale or disposal of the mortgaged property by the mortgagor. It is claimed that the mortgagor's leaving his property in the actual custody of Holland to keep and feed in the mortgagors absence was a disposal of same within the meaning of the mortgage. Holland said that the agreement was that the mortgagor "was to give me $12 per month to take that team and feed them until grass and I was to pasture them." The court declared the law to be that the words "dispose of" as used in the mortgage meant a transfer of the property from the owner to another person by which such owner passed it out of his power or possession by either gift or bargain and

that a mere hiring of same to some other person to take care of such property for a limited time was not a disposal of same within the meaning of the mortgage. We agree that the word dispose has a larger meaning than sell and that selling is only one of the methods of disposing of property. The affirmative part of the court's definition may not be altogether accurate, but the negative part is correct under the facts and that is all we are concerned with. For the mortgagor to place the property in the hands of Holland to keep and care for same at so much per month, the agreement to terminate at will, is not a violation of the disposal clause of the mortgage warranting its foreclosure before the secured note is due

In this view of the case it is not necessary to discuss the effect of defendant's retaining this property in his possession without taking any steps to foreclose for nearly five months after taking possession. The only right as to taking possession conferred by the mortgage on the mortgagee is to enable him to foreclose such mortgage and this the law requires to be done in good faith within a reasonable time. [11 C. J. 590; Miller v. Biggs, 183 S. W. 713.]

We find no error affecting plaintiff's rights and affirm the judgment. *Farrington* and *Bradley, JJ.,* concur.